Andrew McClain, J.,
delivered the opinion of the Court.
The complainants in this cause, bring this suit as the devisees of Leonidas Ketchum, who was the husband of Amelia C., and step-father of the other complainants. Leonidas died in 1862, leaving a will, by which he devised his property to the complainants.
Leonidas, during his life, had become indebted to the defendant, Panthea Dew, and had executed a deed of trust upon five acres of land near the city of Memphis, to secure the payment of this indebtedness. After his death, the trustee was proceeding to sell this land, in pursuance of the terms of the deed, when complainants filed this bill, praying an injunction of this sale, and alleging that the debt mentioned in the deed of trust, to secure which it was executed, was usurious, and insisting upon this and various other reasons why it would be unjust and unconscionable to sell this land and appropriate the proceeds according to the stipulations of-the deed.
*534 It is charged in tbe bill that the debt mentioned in the deed of trust was contracted for five negroes, in the following manner: That the defendant, Mrs. Dew, having these negroes, and wishing to sell them, that Leonidas, as her agent, undertook to sell them for her, and took from her a bill of sale, so that he could the more readily make title to purchasers; and that it was understood that when the negroes were sold he was to have the use of the money at 12 per cent, interest, and that he executed his notes accordingly.
Mrs. Dew answers upon oath, and this charge as to agency is denied, and she insists that the sale was an absolute sale, and the note executed for the purchase money, and the deed of trust executed, to secure payment of purchase money.
The facts of the case, as we gather them from the pleadings and evidence in the cause, are about these: Mrs. Dew was the owner of a life estate in five negroes, which was bequeathed to her by her father, James Black, of Maury county, Tennessee. These negroes were bequeathed to her for life, remainder to her children, free from the marital rights of any husband she might afterwards have. She married, and her husband has died, and she has never had any children.
There are other clauses in the will which will probably give the remainder to the widow and children of Black, in the event she dies without issue.
It appears that, on the 1st of September, 1859, Leonidas, the testator of complainants, bought these negroes from Mrs.' Dew. This sale, which appears to have been a sale, not of the life estate only, but an absolute sale, *535 is evidenced by a memorandum exhibited in the record, bearing date September 1, 1859, signed by the said Leonidas, in which it is set forth that he agrees to pay Mrs. Dew $5,100 on the 1st of January, 1862; and also that he agrees to pay her, on the first day of every January, until the 1st of January, 1862, and then also the sum of $600, as interest on the purchase money. It is further stipulated, that he is to give, as security for the $5,100, a deed of trust upon five acres of real estate near the city limits of Memphis; and all to be arranged by the 1st of January, 1860.
At the time this transaction took place, the negroes were in the possession of Leonidas, at Memphis, and Mrs. Dew lived at Philadelphia, though she was occasionally at Glendale, in Ohio; and the transaction was conducted by correspondence.
Leonidas, having the negroes already in his possession, after this sale was thus agreed upon, took one of the negroes — -a boy, named Isham — to New Orleans, and placed him in a negro mart for sale; and while there he died from the effects of an overdose of laudanum. His death occurred before any note had been executed by Leonidas, or deed of trust, and before Mrs. Dew had executed a bill of sale: Some correspondence took place in reference to the death of Isham, in which the question as to who should be the loser by this accident, was mentioned.
It appears, however, that, in pursuance of the original agreement, as evidenced by the memorandum referred to, the trade was consummated according to the stipulations of that agreement. There is, accordingly, exhibited in *536 the record, a note for §5,100, bearing date January 1, 1860, and due on or before January 1, 1862.
A deed of trust is also exhibited in the record, by which the five acres of land is conveyed in trust to secure this debt. In this deed, the indebtedness is stated, substantially, as in the memorandum of September 1, 1859, though in different form — omitting to mention the installment of $600, interest due January 1, 1860, according to the original agreement; it being then stated to be an indebtedness of $6,300, due by two notes — one for $5,700, due January 1, 1862; the other for $600, due January 1, 1861.
The bill of sale from Mrs. Dew to Leonidas, with warranty of title, also appears in the record. This bill of sale embraces all the negroes — the boy, Isham, with the others — although it was exectued after his death. It is ante-dated, however, so as to correspond with the date of the contract of sale, and bears date September 1, 1859.
"We are satisfied that this transaction was, in point of fact, a sale to Leonidas by Mrs. Dew, and so understood by the parties; and not a mere arrangement, by which he was to sell as her agent.
It is insisted, in argument, that, conceding this to be so, the transaction was nevertheless tainted with usury; that the negroes were sold for vastly more than their value, even if Mrs. Dew had owned the absolute title, but that she was the owner of only a life estate; and, besides that, at the time the deed of trust, note, and bill of sale were executed, Isham was, in point of fact, dead —so that Leonidas only got four negroes, for what' he had originally agreed to give for the five; and that, *537 upon all these grounds, the ease is brought within the principle of the ease of SwansOn vs. White, in 5 Hum., 373.
In that ease, it is held, that, where property is sold at a price gretrtly above its real value, to enable the purchaser by re-sale, at its real value, to raise money, that such transaction is usurious. "We think that case was correctly decided, and have no disposition to disturb it. But we do not perceive how the present case can be brought within the principle of that case.
In the first place, assuming Mrs. Dew to have had the absolute title to these negroes, there is no evidence that the price at which they were sold to Leonidas was above their real value. It appears that Leonidas sold the negroes, except Isham; but it does not appear at what price. In this aspect of the case, then, there is nothing to bring this case within the principle of the case referred to.
In the next place, upon the assumption that Mrs. Dew had only a life estate, and sold the negroes for what they were worth, if absolute title had been conveyed, it is sufficient to say that she gave a bill of sale, with warranty of absolute title.
There is no evidence of fraud practiced by Mrs. Dew upon Leonidas. These were family negroes. Leonidas was a nephew of Mrs. Dew, being a sister’s son. He had had possession of these negroes for some time before his purchase, hiring them out, and controling them for Mrs. Dew; and we think he must have understood the character of Mrs. Dew’s title as well as she did herself.
Under these circumstances, until an eviction, we think *538 there is do ground of relief, either in law or equity. Ve think this is clearly so, in the absence of all proof of the insolvency of Mrs. Dew: Ingram vs. Morgan Garret et als., 4 Hum., 67; McNew vs. Walker, 3 Hum., 186.
But it is also insisted that, at the time the bill of sale, and also the note and deed of trust, were executed, Isham was dead; and that, notwithstanding this was so, $2,000 was included in the note as his price, just as though he were living. If the sale of Isljam had, in point of fact, taken place at the time of the execution of these papers, there would be much force in the argument here presented. But we have already seen that, in point of fact, Isham was sold long before, viz: September 1, 1859. It is true, the bill of sale was Dot executed till after his death; but where there is delivery of possession the sale is valid between the parties, without a bill of sale or other writing. Leonidas was in possession of Isham at the time he bought him, and actually took him off to New Orleans before he received the bill of sale.
Under these circumstances, we do not perceive anything in the fact that the price agreed upon for Isham was included in the note, that ought to excite a suspicion of usury.
It has also been urged in argment, that a purchaser of a life estate in a slave stands in the relation of quasi trustee to the remainderman; and inasmuch as Mrs. Dew had only a life estate, she, in equity, ought not to be allowed to receive more than the value of the life estate, and that the balance, of right, belongs to the remainder- *539 man; and it is now insisted, in behalf of complainants, that these remaindermen should be brought before the Court, and their rights in the premises determined.
Inasmuch as Leonidas and Mrs. Dew have undertaken to deal with this property -upon the assumption that Mrs. Dew had the absolue title, and this with a full knowledge by both of them of the true state of the title, it will not lie with Leonidas or his devisees, now in a contest with Mrs. Dew, to ask that other parties not before the Court shall be brought in so as to shield complainants from the consequences flowing from this transaction.
The remaindermen, whatever their rights may be, are asking nothing at present. Leonidas sold four of the negroes, and probably received- the money; and Leonidas or his devisees can not • be heard to resist the claim of Mrs. Dew, because of a possibility that the remainder-men may seek a recovery from the estate of Leonidas.
As between Leonidas or his devisees, the rule we have already adverted to, will apply. In the absence of fraud, until eviction, no relief against payment of the purchase money will be granted.
It is also insisted that Leonidas had insured Isham, and that, upon the final adjustment, January 1, 1860, it was agreed that if this insurance money were not collected there should be a deduction of the amount of insurance from the note. It is apparent from the letters of the parties in the record that' this was mentioned in the correspondence concerning Isham; but from the testimony of Stanly Mathews, through whom the correspondence was in part conducted, and who was Mrs. Dew’s *540 adviser in lire matter, and wbo swears that he was familiar with the entire transaction, we do not think that this was the agreement and understanding finally arrived at. But if such were the understanding, we do not think that complainants have placed themselves in an attitude to claim the benefit of it. It does not appear that any effort has been made to collect the insurance mone It is alleged that the insurance company refused to pay because Isham committed suicide. It appears from the correspondence that such was not the opinion of Leonidas. Whatever there might have been in this defense, it thus appears that, in the opinion of Leonidas, in point of fact, it did not exist.
Complainants also charge that their testator was entitled to compensation for his services as agent of Mrs; Dew, in managing and hiring out her negroes; and also that he expended money in connection with this agency, for the benefit of Mrs. Dew, and that there should be a deduction of these amounts from the claim of defendant.
Complainants are the devisees of Leonidas, and there is no one suing in character of executor. The claim insisted on could only be made by an executor.
It appears that a payment of $500 was at one time made. The Chancellor allowed this payment, and disallowed the $600 interest per annum, and decreed that defendant’s debt be reduced to $5,100, the price agreed upon for the negroes, September 1, 1859, with interest on the same from that date.
His decree is in all things correct, and is affirmed.